<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DESIREE HENDERSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>　　　　　Defendant. | Civil Action No. 20-19988 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

<u>**SHIPP**</u>**, District Judge**

　　This matter comes before the Court on Defendant Laboratory Corporation of America Holdings's ("Labcorp") Motion for Summary Judgment. (ECF No. 18.) Plaintiff Desiree Henderson ("Henderson") opposed (ECF No. 22), and Labcorp replied (ECF No. 23). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court grants Labcorp's Motion for Summary Judgment.

**I.　　<u>BACKGROUND</u>**

　　The Court draws the following facts from the Statement of Undisputed Material Facts ("SUMF") (SUMF, ECF No. 18-2) and its Response ("RSUMF") (RSUMF, ECF No. 22-2) submitted pursuant to Local Civil Rule 56.1,[1] and from the materials Labcorp submitted in support

---

[1] The Court relies solely on the facts stated in the SUMF that are undisputed by the RSUMF. To the extent that the Court cites to a fact where Henderson's response states that the "document speaks for itself, and any characterization of the text is disputed," the Court cites the document itself.

of its Motion. *See Muskett v. Certegy Check Svcs., Inc.*, No. 08-3975, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010) ("[A] [d]efendant's statement of material facts not in dispute, as to which [p]laintiffs have filed no objection and counter statement, are deemed undisputed.").

In 2009, Henderson joined Labcorp and worked as a Patient Service Technician in locations throughout New Jersey. (SUMF ¶ 3.) As part of Henderson's employment, she executed a Patient Service Technician Agreement which required notice for absences from scheduled work hours. (*Id.* ¶¶ 4-5.) Henderson understood that it was her responsibility to provide sufficient notice to either her supervisor or someone else at Labcorp in the event of an absence. (*Id.* ¶ 5.) In 2016, Henderson joined the Accessioning Department at Labcorp and signed the Attendance Guidelines (the "Guidelines") for Labcorp's Northeast Front End Systems. (*Id.* ¶ 16.) The Guidelines explicitly state that employees' absences may only be deemed "scheduled" when requested at least twenty-four hours in advance and after obtaining supervisor approval. (*Id.* ¶ 17; *see* Barbatsuly Decl., Ex. J.) Unscheduled absences are any absences without such notice or approval, or after an employee fails to report to work at least four hours after the start of the employee's shift. (SUMF ¶ 17; *see* Barbatsuly Decl., Ex. J.) Accruing five or more unscheduled absences warrants discipline, including the possibility of termination after the seventh unscheduled absence. (SUMF ¶¶ 17-18; *see* Barbatsuly Decl., Ex. J.) Like all Labcorp employees, Henderson received and was trained on how to locate and access Labcorp's Employment Policies Manual ("the Manual") during orientation. (*Id.* ¶ 6.) The Manual contains information regarding leaves of absence under the Family and Medical Leave Act ("FMLA") with details on the process by which employees may request such leave. (*Id.* ¶ 8.) Henderson was familiar with how the FMLA process worked at Labcorp. (*Id.* ¶ 10.)

2

Between July 2016 and January 2020, Henderson was diagnosed with major depressive disorder and generalized anxiety disorder and received treatment. (*Id.* ¶¶ 40-41.) In 2019, Henderson exhausted her protected sick time and accumulated six unscheduled absences, which resulted in verbal discipline on December 4, 2019. (*Id.* ¶¶ 23-24; Barbatsuly Decl. Exs. J, M.) After another unscheduled absence on December 13, 2019, Henderson was given a written warning. (SUMF ¶ 26, Barbatsuly Decl., Ex. L.) On December 20, 2019, Henderson recorded yet another unscheduled absence. (SUMF ¶ 27.) Henderson reported various reasons for her absences, none of which related to her depressive or anxiety disorders. (*Id.* ¶ 29; Barbatsuly Decl., Exs. K, O (reporting absences for flat tires, oversleeping, hair braiding appointments, various viruses and infections, and vacating her building).)

On December 24, 2019, Jacqueline Lane ("Lane"), Henderson's supervisor, e-mailed Judi Ahrikenchikh ("Ahrikenchikh"), Labcorp's Employee Relations Specialist, about Henderson's unscheduled absence on December 20, 2019, after Henderson had already received a written warning for violating the Guidelines. (SUMF ¶ 30; Barbatsuly Decl., Ex. N.) On January 2, 2020, Lane and her supervisor, Atul Thaker, sought approval from Human Resources to terminate Henderson due to exceeding the allowable number of unscheduled absences. (SUMF ¶ 31; Barbatsuly Decl., Ex. N.) Ahrikenchikh checked to confirm that there were no open requests from Henderson with Reed Group (Labcorp's third-party benefits administrator), and then sent the approval request to Human Resources. (SUMF ¶ 32; Barbatsuly Decl., Exs. P, D.) Human Resources provided approval to terminate Henderson at 1:34 P.M., after confirming that there were no open FMLA leave requests associated with Henderson on file with Reed Group. (SUMF ¶ 32; Barbatsuly Decl., Exs. P, D.) The termination was approved. (SUMF ¶ 32; Barbatsuly Decl., Exs. P, D.) On the same day, January 2, 2020, and prior to obtaining knowledge of her pending

3

termination, Henderson requested FMLA leave from the Reed Group. (SUMF ¶¶ 33-34.) Notice of this request was emailed to Labcorp at 4:15 P.M. (*Id.* ¶¶ 46-47; Barbatsuly Decl., Ex. Q.) This was the only notice provided to Labcorp about Henderson's FMLA request. (*Id.* ¶ 46; Barbatsuly Decl., Ex. Q.) After receiving notice, Labcorp conversed with its legal team to confirm that it could proceed with Henderson's termination. (SUMF ¶ 35; Barbatsuly Decl., Ex. Q.) Although the parties do not agree on the exact date, they agree that Henderson was ultimately terminated sometime after filing her FMLA leave request, between January 3, 2020, and January 8, 2020. (SUMF ¶ 37; Compl. ¶ 31, ECF No. 1.)[2]

## II. **LEGAL STANDARD**

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion. Fed. R. Civ. P. 56(c)(1)(A); *Est. of Clements v. Apex Asset Mgmt., LLC*, No. 18-0843, 2019 WL 1326885, at *2 (D.N.J. Mar. 25, 2019). "When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine [dispute] of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Prop.*,

---

[2] The Court finds that there are sufficient facts to conclude that Henderson was terminated on January 3, 2020. (*See* SUMF ¶ 37 (Henderson was terminated when she reported to work on the evening of January 3, 2020); Barbatsuly Decl., Ex. R ("Good morning Judi – Desiree Henderson was terminated on Friday night as recommended.").) The exact termination date, however, is not dispositive for the Court's evaluation of the present Motion.

4

941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### III.   DISCUSSION

Under the FMLA, "eligible employees are entitled to [twelve] workweeks of leave during any [twelve]-month period due to an employee's own serious health condition." *Ross v. Gilhuly*, 755 F.3d 185, 191 (3d Cir. 2014). Henderson asserts that after she requested this leave, Labcorp interfered with her request and retaliated against her. The Court reviews each of Henderson's claims below, and for the reasons stated, the Court grants summary judgment on each claim.[3]

#### A.   Summary Judgment as to Henderson's FMLA Interference Claim is Warranted.

The FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). To establish a claim of FMLA interference, Henderson must show that: (1) she was an eligible employee under the FMLA; (2) the defendant is an employer subject to the requirements of the FMLA; (3) [she] was entitled to FMLA leave; (4) [she] gave notice to [Labcorp] of [her] intention to take FMLA leave; and (5) [she] was denied benefits to which she was entitled to under the FMLA. *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017) (quoting *Ross*, 755 F.3d at 191-92). Henderson claims Labcorp interfered with her rights under the

---

[3] Labcorp also moves for summary judgment on Henderson's claims for punitive and emotional distress damages. (Def.'s Moving Br. 22-23, ECF No. 18-1). Because this is conceded, the Court grants summary judgment on damages. (Pl.'s Opp'n Br. 10, ECF No. 22-1.) ("[Henderson] concedes that in an action for FMLA Interference and FMLA Retaliation, [Henderson] is not entitled to Punitive Damages or Emotional Distress Damages.").)

FMLA by terminating her before she took her requested FMLA leave. (Pl.'s Opp'n Br. 6.) Labcorp contends that Henderson fails to establish the fourth and fifth elements. (Def.'s Moving Br. 19.)[4]

### 1. *Element Four: There is not a genuine dispute of fact regarding notice.*

Henderson did not provide sufficient notice to Labcorp to meet the fourth element of an FMLA interference claim. An employee seeking leave under § 2612(a)(1)(D) "shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave under such subparagraph, except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007). An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, including the anticipated timing and duration of the leave. *Id.* at 402. The employee need not expressly assert rights under the FMLA or even mention the FMLA. *Id.* at 402. Accordingly, the "critical test" is not whether the employee gave every necessary detail to determine if the FMLA applies, but "how the information conveyed to the employer is reasonably interpreted." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 303 (3d Cir. 2012) (citation omitted). Henderson, therefore, needed to provide Labcorp with at least verbal notice that she needed leave, as well as some indication of the timing and length of the leave.

Here, it is undisputed that Labcorp only learned of Henderson's request for FMLA leave upon receiving the Reed Group paperwork which was sent via an e-mail message at 4:15 P.M. on January 2, 2020. (SUMF ¶ 46; Barbatsuly Decl., Ex. Q.) Approval to terminate Henderson was

---

[4] It is clear and undisputed that Henderson was an employee eligible under the FMLA, as she suffered from a medical condition and was deemed eligible for leave under the FMLA by Reed Group. (*See* Def.'s Moving Br. 15-19; Ex. Q, ECF No. 18-6.) Similarly, it is undisputed that Labcorp is an employer defined under the FMLA. (Pl.'s Opp'n Br. 6.) The only elements under contention are elements four and five. (*See* Def.'s Moving Br. 19.)

given approximately three hours prior to this notice. (SUMF ¶ 32; Barbatsuly Decl., Exs. P, D.) Additionally, Henderson admitted her communications with her supervisor regarding absences, written or oral, did not indicate that she had a serious health condition, nor did anyone at Labcorp know she had a serious health condition or needed FMLA leave. (SUMF ¶¶ 43-44.) Henderson confirmed she never spoke to her supervisor or anyone else at Labcorp about her request for FMLA leave. (*Id.* ¶ 47.) As such, Henderson did not provide sufficient notice to Labcorp to convey that her request to take FMLA leave for her PTSD rendered her unable to perform her job. There are no facts that indicate that Labcorp possessed any knowledge suggesting that Henderson needed FMLA leave prior to the January 2, 2020, decision to terminate her. (*See generally* SUMF.) In fact, none of Henderson's absences had anything to do with her reasons for FMLA leave. (SUMF ¶ 29; Barbatsuly Decl., Exs. K, O (reporting absences for flat tires, oversleeping, hair braiding appointments, various viruses and infections, and vacating her building).) The Court, therefore, finds that Henderson has not properly provided Labcorp with sufficient notice of her intention to take FMLA leave, thus failing to satisfy the fourth element.

        2.     *Element Five: Henderson fails to establish there was a denial of benefits.*

Courts in this circuit have previously held that an employer cannot evade liability for interfering with an employee's FMLA rights by simply "establishing a legitimate business purpose for its decision." *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006). That is not to say, however, that exercising one's FMLA benefits shields an employee from any and all adverse employment actions. The FMLA should not preclude an employer from terminating an employee when termination would have occurred regardless of the employee's FMLA status. *See Weikel v. Pyramid Healthcare, Inc.*, No. 18-4474, 2019 WL 7285798, at *5 (E.D. Pa. Dec. 27, 2019) (granting summary judgment in favor of an employer who terminated an employee prior to taking

7

FMLA leave because she lied to her supervisor about the reasons for her absences.); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 148 (3d Cir. 2004); *see also Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 978 (8th Cir. 2005) ("[T]he FMLA's plain language and structure dictates that, if an employer were authorized to discharge an employee if the employee were not on FMLA leave, the FMLA does not shield an employee on FMLA leave from the same, lawful discharge.").

Here, Labcorp decided to terminate Henderson based on her unexcused absences which violated the Guidelines. (SUMF ¶¶ 30-31.) Labcorp was not aware of Henderson's FMLA request until after its decision to terminate Henderson. (SUMF ¶¶ 32-34.) Labcorp, therefore, did not interfere with Henderson's FMLA's rights—as its lack of knowledge precludes any suggested interference—and it did not deny her benefits.

**B.      Summary Judgment as to Henderson's FMLA Retaliation Claim is Warranted.**

Henderson alleges that Labcorp's decision to terminate her was an act of retaliation for her filing for FMLA leave in violation of 29 U.S.C. 2615(a)(2). The statute states that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. 2615(a)(2). In FMLA retaliation claims, courts generally apply the *McDonnell-Douglas* burden-shifting framework. *Ross*, 755 F.3d at 193. First, a plaintiff must establish a prima facie case of discrimination, and then, the employer must demonstrate "a legitimate, non-discriminatory reason for the adverse employment action." *Id.* Then, the burden shifts back to the plaintiff to demonstrate "by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination." *Id.* More specifically, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

8

legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir.1994).

Beginning with Labcorp's burden, as noted previously, Labcorp had a legitimate purpose for termination after Henderson exceeded the allowable amount of unexcused absences in violation of the Guidelines. (*See supra* at 7.) The burden, therefore, shifts to Henderson to demonstrate that the adverse decision was causally related to the invocation of her FMLA benefits, not her unexcused absences.

Henderson relies substantially on the temporal proximity between her request to take FMLA leave and her absence-related termination to establish that Labcorp's proffered purpose was not legitimate. (Pl.'s Opp'n Br. 9-10.) Specifically, Henderson alleges that the reasoning for her termination was still ambiguous prior to notice of her FMLA claim. (*Id.*) In some circumstances, timing can be indicative of causation. *See Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000). Temporal proximity on its own, however, is rarely enough to establish motive. *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003). Here, the facts clearly demonstrate that Labcorp had already decided to terminate Henderson for reasons unrelated to her FMLA leave request. (SUMF ¶¶ 31-32; Barbatsuly Decl., Exs. P, D.) Labcorp terminated Henderson not because Henderson filed for FMLA leave but because of her unexcused absences in violation of the Guidelines. This reasoning remained constant both before and after Labcorp received notice of Henderson's FMLA leave request. (*Id.*) There is no indication that one event (Henderson's termination) was influenced by the other (Henderson's FMLA leave request) purely because the two events occurred near each other. The facts presented by Henderson do nothing to indicate that Labcorp's proffered legitimate reason is at all implausible, inconsistent, or incoherent

and, thus, does not demonstrate by preponderance of the evidence that Henderson's termination was directly correlated with her filing for FMLA leave. The Court finds that there can be no inference of a causal link drawn between Henderson's FMLA request and her termination and, therefore, grants summary judgment.

## IV. CONCLUSION

For the reasons set forth above, the Court grants Labcorp's Motion. An order consistent with this Memorandum Opinion will be entered.

*/s/ Michael A. Shipp*
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE